UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SERBRENA MAY ALSTON GREEN,**

        **Plaintiff,**

v.                                            Case No:   6:17-cv-1210-Orl-41GJK

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Serbrena May Alston Green (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Doc. No. 1. Claimant argues that Administrative Law Judge Robert D. Marcinkowski (the "ALJ") committed reversible error by: 1) failing to account for Claimant's headaches, urinary incontinence, and obesity at steps four and five of the sequential evaluation process; and 2) failing to weigh the treatment notes of Dr. Sarkis Barupian, Claimant's treating physician.[1] Doc. No. 15 at 7-12, 15-17. Claimant requests that the Court reverse the Commissioner's final decision and remand the case for further proceedings. *Id.* at 21. For the reasons stated below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

---

[1] For a description of the five-step sequential evaluation process, *see Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

I.         PROCEDURAL BACKGROUND

On December 24, 2011, Claimant filed her DIB application alleging an onset date of July 1, 2010. R. 133, 264. On February 2, 2012, Claimant's application was denied initially. R. 164. On February 24, 2012, Claimant's application was denied upon reconsideration. R. 171. On March 13, 2012, Claimant requested a hearing before an ALJ. R. 177. On June 4, 2013, Claimant attended a hearing before the ALJ. R. 89-120. On July 15, 2013, the ALJ issued an unfavorable decision finding Claimant not disabled. R. 148-156. On August 9, 2013, Claimant requested review of the ALJ's decision. R. 224. On December 16, 2014, the Appeals Council vacated the ALJ's decision and remanded the case for further administrative proceedings because the ALJ failed to proffer post-hearing evidence to Claimant.[2] R. 162.

On July 22, 2015, Claimant attended a second hearing before the ALJ. R. 49-88. On September 11, 2015, the ALJ issued another unfavorable decision finding Claimant not disabled. R. 27-41. On November 3, 2015, Claimant requested review of the ALJ's second decision. R. 15. On January 12, 2017, the Appeals Council denied Claimant's request. R. 9-14. On March 1, 2017, Claimant filed a request for an extension of time to file an appeal in this Court, which the Commissioner granted. R. 2, 7. On June 29, 2017, Claimant filed this appeal. Doc. No. 1.

II.        STANDARD OF REVIEW

The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones*, 190 F.3d at 1228 (citing 20 C.F.R. § 404.1520). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely

---

[2] The Appeals Council's decision states that HALLEX I-2-7-30 requires the ALJ to proffer all post-hearing evidence to the claimant unless: such evidence was submitted by the claimant; the claimant knowingly waived their right to examine such evidence; or the ALJ issues a fully favorable decision. R. 162.

create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must take into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (citations and quotations omitted).

### III. ANALYSIS

#### A. Residual Functional Capacity

##### 1) Claimant's Headaches

At step two, the ALJ found that Claimant had two severe impairments, headaches and a right upper extremity disorder. R. 30. At step four, the ALJ found that Claimant has the residual functional capacity ("RFC") to perform light work except that Claimant can frequently climb, balance, stoop, kneel, crouch, and crawl and occasionally use her right upper extremity for handling and for fine and gross manipulation. R. 34. The ALJ then summarized the medical evidence and stated the following findings regarding Claimant's headaches:

> The record reflects periodic treatments for migraine headaches, however, <u>the medical record does not reflect significant limitations pertaining to [Claimant's] migraine headaches.</u> In fact, [Claimant] did not undergo any diagnostic images of the brain. Her treatments were conservative with medications. She did not require Botox injections. In fact, treatment records from Dr. Barupian, Obstetrics

>   and Gynecology Specialists of Central Florida, and Hill Orthopedic Center showed normal findings on the neurological exams.
>
>   <u>While [Claimant] has had treatments for migraine headaches, they are not documented to the extent alleged and would not preclude her from working on a regular basis.</u> The record fails to show that [Claimant] required significant forms of treatment such as periods of hospital confinement, emergency room treatment, or significant office care for her headaches ….
>
>   In giving [Claimant] the benefit of doubt, the undersigned has determined that the medically determinable impairments of migraine headaches and right upper extremity disorder are severe.

R. 37-38 (emphasis added). Thus, the ALJ summarized the medical evidence and found that it does not reflect significant limitations caused by Claimant's headaches. *Id.* The ALJ also found that Claimant's headaches do not preclude employment on a regular basis and have been treated conservatively with medication. *Id.* The ALJ, however, gave Claimant the benefit of doubt and found her headaches to be a severe impairment at step two. *Id.*

Claimant argues that the ALJ committed reversible error because he found Claimant's headaches to be a severe impairment at step two but failed to include any functional limitations from those headaches in the RFC finding and the vocational expert hypothetical.[3] Doc. No. 15 at 7-10. The Commissioner argues that Claimant only cites her own subjective statements and diagnoses, which by themselves do not establish functional limitations. *Id.* at 13.

According to the Commissioner's regulations, an impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Davis v. Comm'r of Soc. Sec.,* No. 6:12–cv–1694–Orl–36TBS, 2013 WL 6182235, at * 5 (M.D. Fla. Nov. 25, 2013) (citing 20 C.F.R. § 404.1520(c)). A claimant's RFC is the most the claimant can do despite their

---

[3] Claimant does not argue that the ALJ's step four finding that "the medical record does not reflect significant limitations pertaining to [Claimant's] migraine headaches" is inconsistent with his step two finding that such headaches were a severe impairment. Doc. No. 15 at 8-10.

impairments, regardless of their severity. *Id.* (citing 20 C.F.R. § 404.1545(a)(1)). In making an RFC finding, the ALJ is required to consider all medically determinable impairments, severe or non-severe. *Id.* (citing 20 C.F.R. § 404.1545(a)(2)).

Here, the ALJ found that "the medical record does not reflect significant limitations pertaining to [Claimant's] migraine headaches." R. 37. In support, the ALJ found that: 1) Claimant's treatments of her headaches were conservative; 2) Claimant did not undergo any brain imaging or require Botox injections; 3) the treatment records from Claimant's physicians showed normal neurological findings; and 4) Claimant never required hospital visits, emergency room confinement, or significant office care for her headaches. *Id.* Yet, despite the aforementioned findings and evidence, the ALJ gave Claimant the benefit of doubt and found her headaches to be a severe impairment, which, under the Commissioner's regulations, limits Claimant's physical or mental ability to perform basic work activities. *Davis*, 2013 WL 6182235 at * 5. Thus, the issue is whether the ALJ's failure to account for Claimant's headaches in his RFC finding amounts to reversible error after finding such headaches to be a severe impairment.

The Court's decision in *Davis* is instructive. In *Davis*, the claimant argued that the ALJ failed to account for her dermatitis, which was found to be a severe impairment at step two. *Davis*, 2013 WL 6182235 at * 5. The Court found that the ALJ did not explain how the claimant's dermatitis affected her ability to work and that it was not entirely clear that the ALJ's RFC finding contained any limitations arising from the claimant's dermatitis. *Id.* The Court, however, found that "the prevailing rule is that an ALJ does not err solely because she finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Id.* at * 6 (citing authority). The Court noted guidance from the Eleventh Circuit stating that: 1) step two is a threshold inquiry; 2) the claimant's burden at step two is mild; and 3) only

the most trivial impairments may be rejected at step two. *Id.* (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). Thus, the Court found that a claimant's severe impairment "may meet this minimal definition of severity without materially affecting the claimant's RFC." *Id.*[4]

Claimant's argument is unavailing for two reasons. First, the ALJ found that "the medical record does not reflect significant limitations pertaining to [Claimant's] migraine headaches" and provides evidence in support of that finding. As stated previously, the ALJ found that: 1) Claimant's treatments of her headaches were conservative; 2) Claimant did not undergo any brain imaging or require Botox injections; 3) the treatment records from Claimant's physicians showed normal neurological findings; and 4) Claimant never required hospital visits, emergency room confinement, or significant office care for her headaches.[5] R. 37. While the ALJ found Claimant's headaches to be a severe impairment, he made that finding only after making the above-referenced findings but giving Claimant the benefit of doubt. R. 38. Thus, despite his step two finding, the ALJ found that the medical record did not reflect significant limitations from Claimant's headaches, and thus, the ALJ was not required to incorporate any limitations from the same. *See Kunze v. Comm'r of Soc. Sec.*, No. 8:14–cv–1160–T–CM, 2015 WL 3581345, at * 4 (M.D. Fla. Jun. 5, 2015) ("Accordingly, under the Regulations, the ALJ was not required to include in Plaintiff's RFC limitations that he considered and properly rejected as unsupported.").

Second, even if the ALJ were required to incorporate any limitations from Claimant's headaches, Claimant presents no medical evidence showing that her headaches caused work-

---

[4] Courts within the Eleventh Circuit have followed *Davis*' reasoning. *See Aquila v. Colvin*, No. 2:13–cv–658–FtM–DNF, 2015 WL 1293020, at * 5 (M.D. Fla. Mar. 23, 2015) (finding "no inconsistency between the ALJ's finding at step two and his ultimate determination that Plaintiff's sleep apnea did not warrant additional limitations to his RFC."); *O'Grady v. Berryhill*, No. 1:17cv09–CAS, 2017 WL 5618128, at * 10 (N.D. Fla. Nov. 21, 2017) (citing authority and noting that a "finding that an impairment is severe does not require a specific limitation based on that impairment unless supported by the medical record.").

[5] Claimant does not challenge these specific findings from the ALJ. Doc. No. 15 at 8-10.

related functional limitations that were more restrictive than the RFC. Doc. No. 15 at 8-10. Instead, Claimant only presents: 1) her subjective complaints regarding her headaches; and 2) medical diagnoses regarding the same, which by themselves, are insufficient to establish functional limitations that would have an impact on the ALJ's RFC finding. *See Davis*, 2013 WL 6182235 at * 7 ("Plaintiff mistakes conditions, signs, and symptoms for limitations …. An impairment that causes no independent limitations will not affect the RFC assessment."); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (noting that the mere existence of an impairment does not reveal the extent to which that impairment limits a claimant's ability to perform work-related functions). Accordingly, no reversible error has been shown regarding any functional limitations resulting from Claimant's migraine headaches.

### 2) Claimant's Urinary Incontinence

A number of physicians diagnosed Claimant with urinary incontinence and acute dysuria. R. 479-81, 484-86, 572, 591, 597, 647, 648, 789. Two 2011 treatment notes from Dr. Barupian noted: Claimant's complaints of having "to go to the bathroom many times"; that she has had urinary incontinence since having a child; and that such issues are getting worse. R. 484, 486. A January 22, 2015 treatment note from Obstetrics and Gynecology Specialists of Central Florida states that Claimant suffers from occasional leak stress incontinence. R. 591. The treatment note also states that Claimant desired medication but her physician declined to prescribe it, and options such as surgical repair, referral to a urologist, and medications were discussed. *Id.* An April 6, 2015, treatment note from Dr. Barupian states a diagnosis of dysuria along with a recommendation for Claimant to drink cranberry water and monitor her symptoms. R. 789. Other treatment records reflect Claimant's complaints of urinating on herself. R. 478, 572.

>Claimant argues that the ALJ committed reversible error because:
>
>>In spite of all this, the ALJ did not account for [Claimant's] urinary incontinence limitations in any of his findings. [R. 29-41]. He did not accept or reject this impairment. He did not account for how frequently using the restroom and urinating on herself would impact the ability to work.

Doc. No. 15 at 10-11. Thus, Claimant argues that the ALJ did not consider Claimant's urinary incontinence or account for limitations resulting from the same at step four. *Id.* The Commissioner argues that Claimant has only presented diagnoses of urinary incontinence and has not presented any additional functional limitations resulting from the same that are more restrictive than Claimant's RFC. *Id.* at 13.

Claimant's argument is unavailing for two reasons. First, the ALJ adequately considered Claimant's urinary incontinence when determining Claimant's RFC. When making his RFC finding, the ALJ stated that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence …." R. 34. The Eleventh Circuit and other district courts have found that such statements adequately establish that the ALJ considered all of a claimant's impairments, and their combined effects, at all steps of the sequential evaluation process. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013); *Payne v. Colvin*, No. 2:13–cv–00541–LSC, 2015 WL 260716, at *4 (N.D. Ala. Jan. 15, 2015); *Hutson v. Colvin*, No. 3:12–cv–25–J–JRK, 2013 WL 1104879, at *4 (M.D. Fla. Mar. 18, 2013).[6]

Second, even if the ALJ did not adequately consider Claimant's urinary incontinence, Claimant presents no medical evidence showing that her urinary incontinence resulted in work-related functional limitations that were more restrictive than the RFC. As stated previously, the

---

[6] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

treatment notes Claimant cites regarding her urinary incontinence reflect Claimant's complaints, diagnoses, and discussions regarding treatment. R. 479-81, 484-86, 572, 591, 597, 647, 648, 789. None of the above-referenced treatment notes state that Claimant has specific work-related functional limitations resulting from her urinary incontinence and that such limitations are more restrictive than the RFC. *See Moore*, 405 F.3d at 1213 n. 6. Accordingly, no reversible error has been shown regarding the ALJ's consideration of Claimant's urinary incontinence.

### 3) Claimant's Obesity

Dr. Barupian saw Claimant multiple times and diagnosed her with obesity / morbid obesity. R. 487, 522, 524, 525, 684, 685, 732, 733, 788. Dr. Barupian never found that Claimant suffered any functional limitations resulting from her obesity, but recommended a regimen of exercise, weight loss, and a special diet for better nutrition. *Id.* At the hearing, Claimant testified that her weight causes severe fatigue and affects her ability to work. R. 73. Claimant also testified that due to her weight, she could only stand for forty-five minutes to an hour at a time. R. 74. The ALJ did not discuss Claimant's obesity in his opinion.

Claimant argues that the ALJ violated Social Security Ruling 02-1p by not indicating whether Claimant's obesity was a severe impairment or whether she suffered from any limitations as a result of her obesity at steps four and five. Doc. No. 15 at 11-12. In support of her argument, Claimant cites Dr. Barupian's diagnoses and her testimony. *Id.* at 11. The Commissioner argues that the ALJ's error is harmless because Claimant failed to show that her obesity resulted in limitations that are more restrictive than the RFC. *Id.* at 13-15.

In 2002, the Commissioner issued Social Security Ruling 02-01p ("SSR 02-1p"), which provides that the ALJ should consider a claimant's obesity throughout the five-step sequential evaluation process. SSR 02–1p, 2002 WL 34686281 (Sept. 12, 2002). Absent contrary evidence,

the Commissioner will accept a diagnosis of obesity from a treating source or consultative examiner. *Id.* at * 3. A claimant's obesity is a severe impairment if "it significantly limits an individual's physical or mental ability to do basic work activities." *Peters v. Comm'r of Soc. Sec.*, No. 8:16–CV–1901–T–PDB, 2017 WL 4021462, at * 12 (M.D. Fla. Sept. 13, 2017) (citing SSR 02–1p, 2002 WL 34686281 at * 4). No specific level of weight or level of obesity (such as severe, extreme, or morbid) establishes whether a claimant's obesity is a severe impairment. *Id.* Rather, "an individualized assessment of the impact of obesity on an individual's functioning is necessary to determine if obesity is severe." *Id.*

An ALJ, however, does not commit reversible error in failing to find a claimant's obesity severe or otherwise failing to consider it when the claimant fails to provide medical evidence showing that their obesity results in work-related functional limitations that are more restrictive than the ALJ's RFC finding. *See Gary v. Astrue*, No. 1:08cv411–CSC, 2009 WL 3063318, at *3-4 (M.D. Ala. Sept. 22, 2009) ("[T]he objective medical evidence … does not demonstrate that any treating or consultative physicians placed limitations on [the claimant] due to her obesity. Consequently, she is entitled to no relief on this basis."); *Hines v. Colvin*, No. 1:14–cv–124–MP–GRJ, 2015 WL 5619559, at * 5 (N.D. Fla. Aug. 17, 2015) (citing authority and noting that "in the absence of any evidence in the record that Plaintiff's obesity causes additional functional limitations beyond those assessed in the RFC, there is no basis for a remand due to the ALJ's failure to specifically address obesity in the disability determination.").

Here, Dr. Barupian diagnosed Claimant with obesity and morbid obesity. R. 487, 522, 524, 525, 684, 685, 732, 788. Furthermore, Claimant testified that her weight causes severe fatigue, limits her to standing forty-five minutes at a time, and affects her ability to work. R. 73-74. Claimant's testimony appears to contradict the ALJ's RFC finding, which states that Claimant is

able to perform light work.[7] R. 34. Considering this evidence, the ALJ should have taken "an individualized assessment of the impact of obesity on [Claimant's] functioning" to determine whether her obesity is a severe impairment and whether Claimant's obesity results in impairments that should have been accounted for in the RFC. *Peters*, 2017 WL 4021462 at * 12. Thus, the ALJ erred by not engaging in such analysis.

The ALJ's error, however, is harmless because Claimant has not presented any medical evidence establishing that her obesity results in functional limitations that are more restrictive than Claimant's RFC. *Id.* The only medical evidence Claimant cites in support of her obesity are treatment notes from Dr. Barupian stating: 1) diagnoses of obesity and morbid obesity; and 2) recommendations for exercise, weight loss, and a special diet for better nutrition. Doc. No. 15 at 11 (citing R. 487, 490, 491, 522, 524, 525, 684, 685, 732-33, 788, 789). Such treatment notes do not provide any work-related functional limitations that are more restrictive than those found in Claimant's RFC. *See Gary*, 2009 WL 3063318 at *3-4. Thus, because Claimant has failed to present any medical evidence establishing that her obesity results in functional limitations that are more restrictive than Claimant's RFC, the ALJ's failure to consider Claimant's obesity is harmless. *Id.* Accordingly, Claimant has failed to establish reversible error in the ALJ's failure to consider Claimant's allegations of obesity.

### B. Dr. Barupian's Treatment Notes

During a number of visits with Claimant, Dr. Barupian diagnosed Claimant with depression, ranging from mild to severe. R. 479, 480, 521, 523, 530, 787, 788. Dr. Barupian did not impose any work-related mental limitations on Claimant as a result of her depression. *Id.* At step two, the ALJ considered Dr. Barupian's treatment notes and noted his diagnoses of depression.

---

[7] According to the Commissioner's regulations, light work requires either "a good deal of walking or standing, or … involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

R. 30-31. The ALJ, however, found that the "medical record and testimony supports a conclusion that [Claimant] does not have a severe mental impairment." R. 33. In making this finding, the ALJ gave little weight to the opinion of Linda Page, a licensed mental health counselor who found that Claimant had marked restrictions in activities of daily living, extreme difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, and pace, and extreme episodes of decompensation or deterioration at work. R. 32. The ALJ then gave great weight to the opinions of Robert Hodes, Ph.D and Pauline Hightower, Psy.D, two state medical consultants who found that Claimant's anxiety and affective disorder resulted in mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. R. 33. At step four, the ALJ recognized Dr. Barupian's treatment notes and stated that they reflected normal neurological results. R. 35-37. The ALJ did not specifically state the weight given to Dr. Barupian's treatment notes and the reasons therefor. R. 34-38.

Claimant argues that the ALJ committed reversible error by not assigning considerable weight to Dr. Barupian's treatment notes or not finding good cause for doing so. Doc. No. 15 at 16-17. Claimant states that the ALJ's error is not harmless because Dr. Barupian's treatment notes: 1) contradict the ALJ's step two finding that there is no credible evidence of Claimant's mental health problems; and 2) support the limitations found in Ms. Page's opinions, which were given little weight. *Id.* Claimant also argues that the ALJ overlooked portions of Dr. Barupian's treatment notes supporting mental limitations. *Id.* at 16-17. The Commissioner argues that the ALJ committed no reversible error because Dr. Barupian merely stated diagnoses of Claimant's depression and did not offer an opinion as to how her depression affected her ability to work. *Id.*

at 19. The Commissioner also argues that Claimant has failed to show how Dr. Barupian's treatment notes undermined Claimant's RFC. *Id.* at 20.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part in determining whether a claimant is disabled. In cases involving an ALJ's handling of medical opinions, "substantial-evidence review ... involves some intricacy." *Gaskin v. Comm'r of Soc. Sec.*, 533 F. App'x. 929, 931 (11th Cir. 2013). In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citations omitted). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (finding that a failure to state with particularity the weight given to medical opinions and the reasons therefor constitutes reversible error). An ALJ may not "implicitly discount" or ignore any medical opinion. *Winschel*, 631 F.3d at 1178-79; *MacGregor*, 786 F.2d at 1053; *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x. 960, 962-63 (11th Cir. 2015) (finding that it is reversible error for the ALJ to fail to state weight given to a non-examining physician's opinion).

Absent good cause, the opinion of a treating physician must be given substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not

bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Claimant's argument is unavailing for two reasons. First, Dr. Barupian's treatment notes do not contain any specific functional limitations, and thus, need not be specifically weighed. "A medical opinion is a statement reflecting judgment about the nature and severity of an impairment and what a claimant can still do despite it." *Valdez v. Comm'r of Soc. Sec.*, No. 3:14-CV-1328-J-PDB, 2016 WL 836688, at * 4 (M.D. Fla. Mar. 4, 2016) (citing 20 C.F.R. § 404.1527(a)(2)). In *Winschel*, the Eleventh Circuit held that a physician's treatment note may be a medical opinion under the Commissioner's regulations. *Winschel*, 631 F.3d at 1179. If a treatment note, however, does not address the nature and severity of an impairment and what a claimant can do despite that impairment, it is not a medical opinion. *See Valdez,* 2016 WL 836688 at * 5 ("The treatment notes do not appear to contain medical opinions as defined under 20 C.F.R. § 404.1527(a)(2) because they do not contain judgments about the nature and severity of [the claimant's] chronic low back pain … and what he can still do despite it."). Here, Dr. Barupian's treatment notes state that he diagnosed Claimant with depression, but do not address what Claimant can or cannot do despite her depression. *Id.*

Second, even if the ALJ were required to state the weight given to Dr. Barupian's treatment notes and the reasons therefor, such an error is harmless because Claimant has not presented any mental limitations resulting from Claimant's depression that should have been incorporated in Claimant's RFC.[8] *See Steedly v. Astrue*, No. 1:13cv94–WC, 2014 WL 702024, at * 3 (M.D. Ala. Feb. 24, 2014) ("Plaintiff simply failed to meet her burden in establishing that the alleged

---

[8] Claimant's RFC contains no mental limitations, and thus, any work-related mental limitation would be more restrictive than the RFC. R. 34.

depression affected her ability to perform work-related activities beyond the restrictions the ALJ placed on Plaintiff's RFC."). In the parties' memorandum, Plaintiff only provides Dr. Barupian's diagnoses of Claimant's depression and test scores reflecting the same. Doc. No. 15 at 16. Claimant, however, presents no evidence from Dr. Barupian showing any work-related mental limitations that should have been incorporated in the RFC. Accordingly, Claimant failed to establish reversible error in the ALJ's consideration of Dr. Barupian's treatment notes.[9]

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1) **AFFIRM** the Commissioner's final decision; and

2) **DIRECT** the Clerk to enter judgment in favor of the Commissioner and to close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 7, 2018.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[9] To the extent Claimant requests the Court to consider other findings from Dr. Barupian in support of her argument, the undersigned rejects Claimant's invitation to reweigh the evidence. As noted above, the Court must give substantial deference to the ALJ's decision even if the evidence preponderates against it. *See Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x. 862, 864 (11th Cir. 2012) ("Because our limited review precludes us from reweighing the evidence, when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.").

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy